UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

STANLEY KRANTZ

VERSUS

STATE FARM FIRE AND
CASUALTY COMPANY

CIVIL ACTION

NO. 15-56-JJB-RLB

**RULING ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment (Doc. 21) brought by Plaintiff, Stanley Krantz ("Krantz" or "insured"). Defendant, State Farm Fire and Casualty Company ("State Farm" or "insurer"), filed an opposition (Doc. 28) and the plaintiff filed a reply brief (Doc. 29). Oral argument is unnecessary. The Court's jurisdiction exists pursuant to 28 U.S.C. § 1332. For the reasons stated herein, the plaintiff's Motion for Summary Judgment (Doc. 21) is **DENIED**.

   I.   **Background**

The following facts are undisputed. On September 19, 2014, a fire occurred at Krantz's residence causing damage to the home. *Prairieville Fire Dep't R.*, Doc. 21-3. At the time of the fire, State Farm provided a policy of insurance to Krantz that provided fire-related coverage. *Pl.'s Supp. Mem.* 4, Doc. 21-1; *see Insurance Policy*, Doc. 21-4.

Additionally, it is undisputed that on the day of the fire, Krantz and his wife left the residence between 12:30 and 1:00 p.m. to go on a vacation. *Krantz Examination Under Oath* 66: 21-23, Doc. 28-5. In preparation for this vacation, Krantz placed his two snakes in a bedroom and shut the door. *Id.* at 78. Krantz also removed this two dogs and one cat from the home, and set off four bug bombs in the residence. *Id.* at 71:18–24, 76–78. The fire was reported at 2:17 p.m. and the Prairieville Fire Department ("Fire Department") responded to the scene.

1

*Prairieville Fire Dep't R.* 2, Doc. 21-3. The fire at issue originated in Krantz's kitchen and resulted from one of the stove's gas burner's being left in the "on" position. *Id.* at 5.

After the fire, Krantz submitted a claim on the policy to State Farm. *Pl.'s Supp. Mem.* 4, Doc. 21-1. On September 26, 2014, only a week after the fire, State Farm sent Krantz a letter stating: "The estimate to repair or replace your damaged property is $112,522.08. *The enclosed claim payment to you of $68,143.64* is for the actual cash value of the damaged property at the time of loss, less any deductible that may apply." *Letter from State Farm to Stanley Krantz* (Sept. 26, 2014), Doc. 21-2 (emphasis added) (hereinafter "September 26, 2014 letter"). Krantz sent State Farm a proof of loss on December 4, 2014, and subsequently sent several letters to State Farm requesting payment under his policy. *See Letters from Joseph LaHatte, Pl.'s Attorney, to Cindy Ellender, Claim Rep., State Farm*, Doc. 21-6. On July 2, 2015, State Farm officially denied Krantz's claim. *Letter from Jacques Hourhuettes, State Farm, to Stanley Krantz* (July 2, 2015), Doc. 21-7.

Although many of the underlying facts are undisputed, the parties dispute whether the fire was intentionally or unintentionally started. According to Krantz, the Fire Department's report clearly establishes that the fire was unintentional. *Pl.'s Supp. Mem.* 5, Doc. 21-1; *see Prairieville Fire Dep't R.* 5, Doc. 21-3 (checking "unintentional" in box labeled "Cause of Ignition"). Krantz also submits his own affidavit stating that he did not intentionally start the fire and that State Farm's fire investigator, Christian Mulkey ("Mulkey"), told him that the fire was accidental. *Krantz Aff.* ¶ 4, 8, Doc. 21-5.

State Farm contends, however, that the Fire Department's report does not conclusively establish that the fire was accidental. Specifically, State Farm points out that the Fire Department did not conduct a detailed fire cause and origin investigation, did not speak to Krantz during its

2

investigation, and stated that the investigation would be completed by the State's Fire Marshal's Office. *Def.'s Opp'n Mem.* 2, 7; *see Prairieville Fire Dep't R.* 5, Doc. 21-3 ("Fire Marshal's office called to complete the investigation."). The Fire Department did, however, speak to two witnesses who stated that Krantz appeared to be in a hurry and anxious when he left this house shortly before the fire and that Krantz drove away from the house quickly. *Prairieville Fire Dep't R.* 5, Doc. 21-3. Moreover, the Fire Marshal's investigation yielded a report which states that the cause of ignition is "under investigation." *Fire Marshal R.* 5, Doc. 28-3. The report does not find the cause to be "unintentional," although there is a checkbox in the report for such a finding. *Id.* According to this report, the investigation is inactive, but not closed. *Id.* at 10, 13 ("Should new information become available in the future, the investigation will resume."). Finally, State Farm submits the affidavit of Mulkey, who State Farm asked to perform a fire origin and cause investigation. *Mulkey Aff.* ¶ 1, Doc. 28-4. Mulkey rebuts Krantz's claim, stating that he never told Krantz or anyone else that the fire was accidental. *Id.* at ¶ 2.

Due to State Farm's refusal to pay, Krantz filed a petition for damages and penalty damages, in Louisiana state court. State Farm removed the case to this Court. *Notice of Removal*, Doc. 1. In response to Krantz's complaint, State Farm alleged the affirmative defenses of arson and material misrepresentation. Krantz has now brought the instant motion requesting summary judgment on its claim for bad faith damages. Doc. 21.

## II.  Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at

trial rests on the non-moving party,[1] the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996). If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322–23.

### III. Discussion

#### a. *Fraud / Misrepresentation*

According to the plaintiff, there is no genuine issue of material fact that defendant State Farm "committed fraud and misrepresentation when it sent its insured, Stanley Krantz, a letter dated September 26, 2014, falsely instructing its insured that a payment was enclosed" but failing to enclose or ever send such payment. *Pl.'s Supp. Mem.* 1, Doc. 21-1.[2] To support his

---

[1] For the affirmative defense of arson, the burden at trial rests with the insurer. *Sumrall v. Providence Washington Ins. Co.*, 60 So. 2d 68, 69 (La. 1952).

[2] It is unclear whether the plaintiff intends this allegation as a separate cause of action—i.e. fraud and/or misrepresentation—or if this is merely another example of the alleged bad faith practices of State Farm during the course of the claims process. At one point, the plaintiff states that State Farm "*fraudulently conveyed* to Stanley

4

contention, the plaintiff only submitted a copy of the September 26, 2014 letter and his affidavit declaring that he never received the "enclosed" payment. *See Letter from State Farm to Stanley Krantz* (Sept. 26, 2014), Doc. 21-2; *Krantz Aff.*, Doc. 21-5.

In response, State Farm contends that even if "Plaintiff's arguments are believed, there was simply a failure to send money that was supposedly promised," rather than misrepresentation. *Def.'s Opp'n Mem.* 22, Doc. 28. State Farm does not dispute that the plaintiff received the letter in question, that the letter stated that a payment was enclosed, nor that the payment was not actually enclosed. According to State Farm, the September 26, 2014 letter[3] referred to by the plaintiff was a draft estimate that is created by State Farm's computer system. *Id.* at 22–23. This draft estimate was prepared by a claim representative on September 26, 2014—the day after State Farm was notified of the plaintiff's claim. *Id.* State Farm submitted an affidavit of Cindy Ellender, which states:

> The estimate attached to the November 14 letter was not a final version. . . . The computer software automatically generates what is shown as page three of the estimate. That page is to be removed in the event only a draft of the estimate is being sent to a claimant, as was the case here. That page was inadvertently left in the estimate that was sent to the Plaintiff's attorney on November 14, 2014.

---

Krantz that a payment . . . was forthcoming, but failed to send the payment[.]" *Id.* at 2 (emphasis added). Later, the plaintiff alleges that "State Farm either *negligently or intentionally* forgot to send Stanley Krantz these payments . . . in blatant *violation of Louisiana Insurance Bad Faith Statutes 22:1892 and 22:1973* . . . . This action in of itself is *fraud*; at the very least, an *intentional misrepresentation*." *Id.* at 5 (emphasis added). If the plaintiff is merely asserting that this letter is further evidence of State Farm's arbitrary and capricious nature in handling the claims process, then see the discussion *infra* Section III(b).

[3] State Farm claims that the plaintiff failed to provide the Court will all relevant documentation concerning the "September 26, 2014 letter." According to State Farm, the "letter" that the plaintiff relies on is actually an estimate, generated on September 26, 2014, that was attached to a letter State Farm sent to the plaintiff on November 14, 2014. State Farm submitted the entire letter, with attachments, to the Court. Doc. 28-6. The letter specifically states: "Please be advised that we are continuing with our investigation of this fire loss and are requesting that Stanley Krantz and Lisa Krantz each appear for an Examination under Oath." *Letter from Cindy Ellender, Claim Rep., State Farm, to Joey LaHatte, Pl.'s Attorney* (Nov. 14, 2014), Doc. 28-6, at 15. The letter also explained that State Farm attached to the letter copies of its correspondence with Krantz, "as well as all estimates prepared." *Id.* Following this letter, in the attachments State Farm submitted to the Court, is a ninety-five page document entitled "Claim Rep Draft." *See id.* 16. Page three of the "Claim Rep Draft" attached to the letter appears to be the same document referred to as the "September 26, 2014 letter" (Doc. 21-2) by the plaintiff, discussing the "enclosed claim payment." *Id.* at 18.

5

* * *

> I did not intend to include that page when the estimate was sent on November 14, 2014, and I did not intend to represent that payment was being enclosed with the estimate. I would not have intended this to represent a payment letter since the matter was still under investigation.

*Ellender Aff.* ¶ 9, 11, Doc. 28-6.

Based on the evidence presented, there is a genuine dispute concerning the defendant's intent when it included the "enclosed claim payment" language in its correspondence with the plaintiff. Moreover, the plaintiff has failed to establish that he is entitled to judgment as a matter of law regarding this claim. At the very least, if the plaintiff is alleging negligent misrepresentation such an allegation requires some showing of damages. *Duplechin v. Adams*, 665 So. 2d 80, 84 (La. App. 1st Cir. 1995) ("In order for a plaintiff to recover for negligent misrepresentation, there must be a legal duty on the part of the defendant to supply correct information, a breach of that duty, and damages to the plaintiff caused by the breach."). Plaintiff has failed to allege any damages from this action.

    **b.** *Bad Faith Damages: La. R.S. 22:1892 and 22:1973*

The plaintiff, through this motion, requests the Court to find that the defendant State Farm acted in an arbitrary and capricious manner during the entire claims process, in violation of La. R.S. 22:1892 and 22:1973. Accordingly, the plaintiff requests bad faith penalties, attorney's fees, costs, and judicial interest. *Pl.'s Supp. Mem.* 2, Doc. 21-1. In response, State Farm points out that it has pleaded an arson defense, which, if proven, prevents any payment under the insurance policy. *Def.'s Opp'n Mem.* 1, Doc. 28. State Farm disputes that the fire was unintentional and therefore asserts that for that reason "it is . . . impossible to decide whether or not State Farm's nonpayment of the claim arising from the fire was in 'bad faith.'" *Id.* at 2.

Under La. R.S. 22:1892(A)(1), an insurer in Louisiana has a duty to "pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured . . . ." A failure to pay that is "arbitrary, capricious, or without probable cause" renders an insurer liable for the resulting damages and for a statutory penalty, attorney's fees, and costs. *Id.* at 22:1892(B)(1). The statute carves out an exemption to the thirty-day requirement for losses resulting from fire. In these cases, the thirty-day period does not apply "where the loss from fire was arson related and the state fire marshal or other state or local investigative bodies have the loss under active arson investigation." *Id.* at 22:1892(B)(2). Thus, the thirty-day period does not begin to run until there is a "certification of the investigating authority that there is no evidence of arson or that there is insufficient evidence to warrant further proceedings." *Id.*

Under Section 22:1973(A), insurers in Louisiana owe the insured "a duty of good faith and fair dealing." An insurer breaches this duty if it fails to "pay the amount of any claim due to [the insured] within sixty days after receipt of satisfactory proof of loss . . . when such failure is arbitrary, capricious, or without probable cause." *Id.* at 22:1973(B)(5). A breaching insurer is liable for "any damages sustained as a result of the breach," *id.* at 22:1973(A), as well as potential penalties, *id.* at 22:1973(C).

To obtain penalties or damages under either La. R.S. 22:1892 or 22:1973, an insured must demonstrate that (1) the insurer has received satisfactory proof of loss, (2) the insurer fails to tender payment within the statutory period (either thirty or sixty days) of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious, or without probable cause. *Dominio v. Allstate Ins. Co.*, Civil Action No. 09-7348, 2010 WL 4066647, *4 (E.D. La. Oct. 15, 2010) (quoting *La. Bag Co. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1112–13 (La. 2008)).

7

In this case, it is undisputed that (1) satisfactory proof of loss was made and (2) State Farm failed to tender payment within the statutory period.[4] Therefore, the remaining issue is whether State Farm's failure to pay was arbitrary and capricious. "Arbitrary and capricious" is synonymous with "vexatious," and a "vexatious refusal to pay" means "unjustified, without reasonable or probable cause or excuse." *La. Bag Co.*, 999 So. 2d at 1114. The statutes at issue "are not intended . . . to prevent insurers from disputing claims in good faith, including litigating such disputes." *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 299 (5th Cir. 2009). Therefore, "[a]n insurer does not act arbitrarily and capriciously . . . when it withholds payment based on a genuine (good faith) dispute about the amount of a loss or the applicability of coverage. *Id.* at 297–98 (citation omitted). Louisiana courts have recognized that an insured's failure to pay based on a good faith belief of arson is not arbitrary and capricious. *Young v. State Farm Fire & Cas. Ins. Co.*, 426 So. 2d 636, 645 (La. App. 1st Cir. 1982) ("In a case . . . in which there were admittedly suspicious circumstances surrounding the fire, State Farm was within its rights in refusing to pay the claim and in litigating the matter based upon the arson defense."); *see Fontenot v. Hanover Ins. Co.*, 473 So. 2d 145 (La. App. 3d Cir. 1985); *Bradford v. Canadian Fire Ins. Co.*, 150 So. 2d 630 (La. App. 3d Cir. 1963). In this case, State Farm has asserted it did not act arbitrarily and capricious when it failed to pay the plaintiff's claim because State Farm has a good faith belief that the fire was caused by arson.

---

[4] The exemption provided in La. R.S. 22:1892(B)(2) is inapplicable in this case because there was no *active* arson investigation being conducted by a public body. As previously stated, the Fire Marshal's report indicated that the investigation was "inactive," albeit, not closed. Regardless, in order to recover bad faith damages, the plaintiff must still establish that State Farm's failure to pay was arbitrary and capricious. Although the absence or presence of an arson investigation, either public or private, is relevant to the determination of whether the insurer acted in an arbitrary and capricious manner, the public investigation exemption is merely one avenue for suspending the thirty day deadline. If the exemption does not apply, then failure to pay thirty days after satisfactory proof of loss is provided is a violation of the statute only if it was arbitrary, capricious, or without probable cause.

1.  Arson

Under Louisiana law, arson is an affirmative defense against a claim for fire insurance proceeds. *Kelly v. Commercial Union Ins. Co.*, 709 F.2d 973, 975 (5th Cir. 1983). To prevail on an arson defense, the defendant must demonstrate (1) that the fire was of an incendiary origin, and (2) that the plaintiff was responsible for setting the fire. *Id.* (citing *Sumrall*, 60 So. 2d at 69). Arson can be established by a preponderance of the evidence and is often proven by circumstantial evidence. *See Cowen v. Allstate Ins. Co.*, Civil Action No. 11-118, 2011 WL 5869449, *3 (E.D. La. Nov. 22, 2011); *B. Bennett Mfg. Co. v. S.C. Ins. Co.*, 692 So. 2d 1258, 1269 (La. App. 1997). The plaintiff must demonstrate that there is no genuine issue of material fact that State Farm's failure to pay due to its claim of arson is arbitrary and capricious. For the plaintiff to succeed on his motion for summary judgment, he must demonstrate an absence of factual support for one of the elements of State Farm's arson defense. *Citizens Sav. Bank v. Safeways Ins. Co. of La.*, No. 2006 CA 1340, 2007 WL 1300817, *5 (La. App. 1st Cir. 2007).

The first element in an arson defense is that the fire was of an incendiary origin. "Incendiary" is defined as follows: "1. One who deliberately and unlawfully sets fire to property." . . . 2. An instrument . . . or chemical agent designed to start a fire." *Black's Law Dictionary* (10th ed. 2014). A fire's "incendiary" origin is often established by evidence that some form of an accelerant was used. *See Rist v. Commercial Union Ins. Co.*, 376 So. 2d 113, 114 (La. 1979); *Briggs v. N.H. Indem. Co.*, 579 So. 2d 1221, 1222 (La. App. 3d Cir. 1991). For purposes of summary judgment, sufficient evidence can be established demonstrating a genuine issue concerning the fire's incendiary origin despite a lack of physical evidence proving that an accelerant was used. *See Sowards v. Grange Mut. Cas. Co.*, No. 3:07-cv-0354, 2008 WL 3164523, *4–5 (M.D. Tenn. Aug. 4, 2008). For example, in *Sowards*, the insurer hired an

investigator to determine the cause and origin of a fire at issue in an insured's policy claim. *Id.* at *4. Even though laboratory tests of samples taken from the debris revealed "no identifiable accelerants," the investigation concluded that "[a]ll physical evidence indicates that this fire is Incendiary in Origin, occurring as the result of someone pouring a flammable or combustible liquid substance inside the home and igniting same." *Id.* (citation omitted). The investigator reached this conclusion by examining the debris and other materials in the kitchen where the fire originated. *Id.* Specifically, the investigator removed and examined the stove, where the heaviest damage was located: "This damage was so intense that it *could not* have been caused by normal temperatures produced in a residential fire. This amount of damage can only occur as the result of a flammable liquid, chemical or accelerant." *Id.* The plaintiff, on the other hand, presented evidence that the fire may have been caused by an electrical problem or by accident. *Id.* at *5. The court concluded that even though the plaintiff's argument "is certainly plausible, the evidence presented by [the insurer] that the fire was of incendiary origin nevertheless is sufficient to survive the plaintiff's summary judgment motion." *Id.*

   Here, the plaintiff points to his own affidavit and the Fire Department's report to argue that the fire was accidental—i.e. the stove was accidentally left on, and therefore, not of an incendiary origin. *See Pl.'s Reply Mem.* 1, Doc. 29 ("[T]here is absolutely no evidence whatsoever indicating that this fire was of incendiary origin and/or that Stanley Krantz intentionally set the fire."). State Farm does not directly address the first element and jumps straight to discussing the evidence demonstrating that the plaintiff caused the fire. Regardless, there is a genuine issue regarding whether the fire was of an incendiary origin, based on the

10

evidence presented.[5] Specifically, the summary judgment evidence establishes that shortly before the fire the plaintiff set off four bug bombs in the house. According to State Farm, such behavior is suspicious because bug bombs use aerosol to disperse pesticides and "it is common knowledge that aerosol is flammable, as every aerosol container, and bug bombs in particular, come with a warning label concerning flammability." *Def.'s Opp'n Mem.* 12, Doc. 28. State Farm also submits the Fire Marshal's report, which states that the cause of the fire is "under investigation," and does not conclude that it was "unintentional." Additionally, State Farm points to other evidence indicating that the fire was intentionally set, such as the witness testimony stating that the plaintiff left the house in a hurry shortly before the fire and the fact that the plaintiff removed his dogs and cat from the home. As was the case in *Sowards*, the plaintiff's argument that the fire was accidentally started is plausible.[6] However, when viewing the evidence in the light most favorable to the non-moving party—State Farm—the suspicious facts surrounding the fire are sufficient, for purposes of summary judgment, to raise a genuine issue regarding whether the fire was of incendiary origin.

The second element in an arson defense is that the plaintiff was responsible for causing the fire. "Proof of plaintiff's responsibility may be demonstrated by circumstantial evidence, including by proof of plaintiff's motive." *Cowen*, 2011 WL 5869449, *8; *see Briggs*, 579 So. 2d

---

[5] An alternate basis for denying the plaintiff's motion exists pursuant to Federal Rule of Civil Procedure 56(d). According to State Farm, the "discovery period has just begun, with discovery to be completed by **January 21, 2016**, and expert discovery . . . to be completed by **July 13, 2016**." *Def.'s Opp'n Mem.* 3, Doc. 28. State Farm asserts that they have not had sufficient opportunity to conduct discovery. *Id.* Specifically, State Farm still needs to depose several witnesses, including the plaintiff, the plaintiff's wife, the plaintiff's daughter, the plaintiff's neighbors, and Prairieville Fire Department personnel. *Id.* at 3–4. Moreover, State Farm has requested production of the stove, which was removed from the property before State Farm could examine it. *Id.* at 3. Although the Court believes that the evidence presented demonstrates a genuine issue, examination of the stove and depositions of various witnesses could provide further evidence of the fire's incendiary origin.

[6] Evidence that an appliance was left on may be sufficient, *at trial*, to rebut a finding that the fire was of incendiary origin. *See Briggs*, 579 So. 2d at 1222 (stating that a "non-incendiary cause of the fire" included "an electrical wiring defect or an appliance left in operation"). At *summary judgment*, however, evidence which demonstrates a genuine issue concerning the incendiary origin of the fire is sufficient.

11

at 1223 (citing *Rist*, 376 So. 2d 113). Again, the plaintiff's argument relies on the Fire Department's report that the fire was "unintentional" and the plaintiff's own affidavit that he did not intentionally set the fire. In response, State Farm sets forth evidence demonstrating that the plaintiff had both the opportunity and motive to set the fire.[7]

Motive "can include dire financial straits . . . and the desire to make money[.]" *La. Real Estate Appraisal Serv. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, Civ. A. No. 84-6129, 1987 WL 15955, *4 (E.D. La. Aug. 14, 1987); *see Sumrall*, 60 So. 2d 68, 70 ("Considering that plaintiff was in dire financial circumstances and that he alone . . . would benefit by the fire, there can be no doubt that defendant has established that he had a motive for destroying the property.").

State Farm offers ample evidence that the plaintiff had a financial motive to set the fire and collect insurance proceeds. Specifically, State Farm states that the plaintiff was unemployed at the time of the fire, both he and his wife were on fixed Social Security disability benefits, the plaintiff admitted to having money trouble and to mismanaging his money prior to the fire, the plaintiff and his wife were behind on paying medical bills in 2014, and the plaintiff was denied credit for a truck. *Def.'s Opp'n Mem.* 10–11, Doc. 28; *see Ellender Aff.*, Doc. 28-6; *Krantz Examination Under Oath*, Doc. 28-5. Additionally, at the time of the fire, the plaintiff was in default on a loan secured by the property at issue. *Def.'s Opp'n Mem.* 11, Doc. 28. Only

---

[7] State Farm breaks down the "responsibility" element of the arson defense, when circumstantial evidence is used, into two factors: "(1) opportunity (i.e., is it possible for the plaintiff to have set the fire?); and (2) motive (did the plaintiff have a reason to set the fire?)." *Def.'s Opp'n Mem.* 9, Doc. 28. State Farm does not provide citations to the relevant authority for this proposition, and, as discussed above, the Louisiana Supreme Court focuses explicitly on "motive," although implicit in a finding of arson is a determination as to "opportunity." According to State Farm, the plaintiff had the opportunity to set the fire because the plaintiff testified in his Examination Under Oath that he and his wife left their residence between 12:30 and 1:00 pm on the day of the fire—the fire was reported at 2:17 pm— and the plaintiff has been inconsistent concerning whether he or his wife used the stove that day. *Def.'s Opp'n Mem.* 9–10, Doc. 28. Based on the evidence presented, there is a genuine issue concerning whether the plaintiff had an opportunity to set the fire.

seventeen days prior to the accident, the Small Business Administration sent a letter to the plaintiff stating that the loan was in default due to a failure to make monthly payments and that the entire balance of the loan ($72,770.69) was due. *Id.* at 11–12. The evidence presented by State Farm concerning the plaintiff's opportunity and motive, is sufficient to establish a genuine issue for summary judgment purposes regarding whether the plaintiff was responsible for setting the fire.

Therefore, summary judgment is inappropriate on the plaintiff's claim for bad faith damages under La. R.S. 22:1892 and 22:1973 because there is a genuine issue of material fact at this time concerning whether State Farm's failure to pay was arbitrary, capricious, or without probable cause.

**IV.    Conclusion**

For the reasons stated herein, the Plaintiff's Motion for Summary Judgment (Doc. 21) is **DENIED**.

Signed in Baton Rouge, Louisiana, on November 24, 2015.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**