UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

STANLEY KRANTZ                                             CIVIL ACTION

VERSUS                                                     NO. 15-56-JJB-RLB

STATE FARM FIRE AND
CASUALTY COMPANY

**ORDER**

Before the court is Stanley Krantz's ("Plaintiff" or "Mr. Krantz") Motion to Compel, which seeks an order compelling the Rule 30(b)(6) deposition of State Farm Fire and Casualty Company ("Defendant" or "State Farm") and the deposition of Cindy Ellender, a non-party State Farm representative (R. Doc. 30). The motion is opposed. (R. Doc. 34). Mr. Krantz has filed a Reply. (R. Doc. 45).

Also before the court is State Farm's Motion for Protective Order, which seeks an order limiting the noticed topics for its Rule 30(b)(6) deposition. (R. Doc. 33). The motion is opposed. (R. Doc. 45). State Farm has filed a Reply. (R. Doc. 44).

As the foregoing motions are interrelated, the court considers them together.

**I.     Background**

Mr. Krantz's house sustained damages from a fire on September 19, 2014. After Mr. Krantz submitted a claim on his State Farm homeowner's insurance policy, he received a letter from State Farm stating the following: "The estimate to repair or replace your damaged property is $112,522.08. The enclosed payment to you of $68,143.64 is for the actual cash value of the damaged property at the time of the loss, less any deductible that may apply." (R. Doc. 21-2). The letter did not enclose the referenced payment. State Farm has not subsequently made a

payment on Mr. Krantz's claim.  Instead, State Farm has taken the position that the fire was intentionally started by Mr. Krantz and no payment is due under the policy.

On January 26, 2015, Mr. Krantz filed this action in state court seeking to recover contractual and bad faith damages from State Farm. (R. Doc. 1-3, "Petition").  State Farm removed the action on February 5, 2015 on the basis that the court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. (R. Doc. 1).

On June 16, 2015, Plaintiff's counsel requested dates for a Rule 30(b)(6) deposition of State Farm and for the deposition of Ms. Ellender.  (R. Doc. 30-3).  Plaintiff's counsel requested a response within ten days and for defense counsel's office to coordinate deposition dates with his paralegal.  Plaintiff's counsel served a Notice for the Rule 30(b)(6) deposition of State Farm, which includes 36 topics of inquiry.  (R. Doc. 30-6).

On June 25, 2015, defense counsel requested Plaintiff's counsel to contact his paralegal to select a date for Ms. Ellender's deposition. (R. Doc. 33-2).  In the same communication, defense counsel objected to the topics of the noticed Rule 30(b)(6) deposition as overly broad, vague, and irrelevant.  Defense counsel requested Plaintiff's counsel to provide a modified notice and to hold a discovery conference to discuss the Rule 30(b)(6) deposition.

On July 8, 2015, counsel for the parties held the requested discovery conference.  (R. Doc. 33-5 at 1).

On July 15, 2015, defense counsel confirmed that at the discovery conference, Plaintiff's counsel agreed to withhold the request for the Rule 30(b)(6) deposition until after the deposition of Ms. Ellender was taken, so that Plaintiff' counsel could then determine whether the Rule 30(b)(6) deposition was still needed. (R. Doc. 33-3).

2

On October 28, 2015, Plaintiff's counsel again requested dates for the depositions of State Farm and Ms. Ellender. (R. Doc. 30-4).  Noting defense counsel's objections to the topics of the Rule 30(b)(6) deposition, Plaintiff's counsel stated that he felt the topics are indeed relevant and resubmitted the same notice for the deposition.  Plaintiff's counsel further provided that if Ms. Ellender can address all of the topics in the noticed Rule 30(b)(6) deposition, then both depositions could be taken simultaneously.

On November 4, 2015, defense counsel again requested Plaintiff's counsel to contact his paralegal to select a date for Ms. Ellender's deposition.  (R. Doc. 33-4).  Defense counsel also provided that he intended to file a motion for protective order with regard to the Rule 30(b)(6) deposition of State Farm.

On November 11, 2015 Plaintiff's counsel informed defense counsel that his paralegal attempted to schedule the depositions, but was told that defense counsel had no availability until January. (R. Doc. 30-5).  Noting the approaching fact discovery deadline of January 21, 2016, Plaintiff's counsel requested that some other attorney from defense counsel's office participate in the depositions.  Plaintiff's counsel stated that if he did not receive a response he would file a motion to compel the depositions.

On November 18, 2015, Mr. Krantz filed his Motion to Compel (R. Doc. 30), in support of which Plaintiff's counsel certifies he has made good faith efforts to resolve the discovery dispute and has been attempting to schedule the depositions of State Farm and Ms. Ellender since June of 2015 (R. Doc. 30-7).  Mr. Krantz seeks an order compelling the depositions of State Farm and Ms. Ellender on the following dates that Plaintiff's counsel is available prior to the fact discovery deadline:  December 7-11, 13, 29-30 and January 4-6, 8, and 11.  (R. Doc. 30-1 at 4-5).  Mr. Krantz further seeks to recover reasonable attorney's fees and costs. (R. Doc. 30-2).

3

On November 20, 2015, State Farm filed its Motion for Protective Order (R. Doc. 33), in support of which defense counsel certifies the June 8, 2015 discovery conference between the parties constitutes the necessary conference required prior to the filing of the motion. (R. Doc. 33-5). State Farm seeks an order limiting all topics of the noticed Rule 30(b)(6) deposition to "information from the time period of September 19, 2014 to present, pertaining to State Farm's activity in Louisiana, and pertaining to first party fire claims"; striking or further limiting Topics 2-4, 7, 9-17, 19-22, and 33; and awarding attorney's fees in the amount of $2,500. (R. Doc. 33-7; *see* R. Doc. 6 at 3-15)

## II.     Law and Analysis

### A.     The Noticed Deposition of Cindy Ellender

Counsel for the parties have represented to the court that since the filing of their respective motions the deposition of Cindy Ellender has taken place. Accordingly, the court need not compel the deposition of Ms. Ellender.

### B.     The Noticed Rule 30(b)(6) Deposition of State Farm

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).[1]  The court must limit the frequency or extent of discovery if it determines that: "(i) the

---

[1] The current version of Rule 26(b)(1) became effective on December 1, 2015. The former version of Rule 26(b)(1) did not contain the "proportional to the needs of the case" language in defining the scope of

4

discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Rule 30(b)(6) governs deposition notices directed to organizations. In the deposition notice, the party "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). In response, the organization must designate an agent or other person to testify on its behalf "about information known or reasonably available to the organization." *Id*. "The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d

---

discovery. The former version of the rule nevertheless provided that the district court must "limit the frequency or extent of discovery" if it determined that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Rule 26(b)(2)(C)(iii) (former version). For the purpose of the instant motions, the same result would follow regardless of which version of Rule 26 was applied.

416, 433 (5th Cir. 2006). The court may limit a Rule 30(b)(6) deposition notice to the extent it requests the organization to designate an agent to testify on topics of information that are overly broad, vague, or ambiguous. *See*, *e.g.*, *Scioneaux v. Elevating Boats, LLC*, No. 10-0133, 2010 WL 4366417, at *3 (E.D. La. Oct. 20, 2010) (quashing deposition notice where the plaintiff failed to particularize the topics of discussion in Rule 30(b)(6) deposition notice); *In re Katrina Canal Breaches Consolidates Litigation*, No. 05-4182, 2008 WL 4833023 (E.D. La. July 2, 2008) (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous); *Padana Assicurazioni–Societa Azioni v. M/V Caribbean Exp.*, No. 97-3855, 1999 WL 30966 (E.D. La. Jan. 21,1999) (denying motion to compel Rule 30(b)(6) deposition where the notice was insufficiently particularized).

The deposition notice at issue provides 36 topics of inquiry. (R. Doc. 33-1). State Farm seeks an order (1) limiting all topics of the noticed deposition to "information from the time period of September 19, 2014 to present, pertaining to State Farm's activity in Louisiana, and pertaining to first party fire claims"; (2) limiting Topic 10 to the "identification of State Farm personnel who handled the Plaintiff's fire claim arising from the September 19, 2014 fire, and their managers"; and (3) striking Topics 2-4, 7, 9, 11-17, 19-22, and 33 as overly broad, vague, and/or irrelevant. (R. Doc. 6 at 3-15).

In opposition, Mr. Krantz argues that all topics listed in the Rule 30(b)(6) deposition notice are "highly relevant to this case" and that Plaintiff's counsel has used similar Rule 30(b)(6) deposition notices in the past "without incident with other Louisiana Insurance companies." (R. Doc. 45 at 8 n. 7-8).

Considering the record of the instant matter, the range of topics listed in the Rule 30(b)(6) deposition notice, and the fact that the discovery deadline has passed, the court will consider each of the disputed topics to determine whether they fall within the scope of discovery.

### 1.    Limitations to the General Scope of Topics

The court agrees with State Farm that the topics for the Rule 30(b)(6) deposition are generally overly broad as stated.  As noted by State Farm, "[n]one of the topics in the Notice are limited with regard to time period, and most are not limited with regard to geography (claims in Louisiana) or the type of claims (first part fire damage claims)." (R. Doc. 33-6 at 3).  The court concludes that the following limitations to the deposition topics strikes the correct balance in ensuring that Mr. Krantz has the opportunity to question State Farm's corporate representative(s) on relevant topics that are proportional to the needs of the case.  All topics in the noticed Rule 30(b)(6) deposition, unless otherwise stated below and/or otherwise further limited by the topic itself, shall be limited to (1) information used by State Farm and its claims adjusters as of the date of the September 19, 2014 fire; and (2) information pertaining to first-party homeowners' insurance claims involving property damage to real property in Louisiana, whether by fire or otherwise.

### 2.    Limitations to Specific Topics

State Farm requests the court to limit or strike specific topics listed in the Rule 30(b)(6) Notice.  The court will address the specific topics challenged by State Farm in light of the foregoing general limitations placed on all of the deposition topics.

**Topic 2**

**Defendant's policy, practice, and procedure of developing claims handling manuals, guidelines, or any other documents used to instruct personnel on the claims handling and/or adjustment process, including additions, deletions and other revisions from previous versions of any such material.**

State Farm argues that its "development" of claims handling manuals and documents is irrelevant and should be stricken. (R. Doc. 33-6 at 5). In response, Mr. Krantz queries how the "use" of these documents is irrelevant or overbroad. (R. Doc. 45 at 7). The use of these documents, however, is not reflected in Topic 2. Mr. Krantz does not address how the "development" of claims handling manuals and documents, as well as "additions, deletions and other revisions from previous versions of any such material," are relevant to the claims and defenses in this action.

As stated, Topic 2 is overly broad and seeks irrelevant information. Accordingly, the court **limits** Topic 2 to the actual "claims handling manuals, guidelines, or any other documents used to instruct personnel on the claims handling and/or adjustment practice" used by State Farm to instruct its claims adjusters as of September 19, 2014 to adjust first-party homeowners' insurance claims involving property damage to real property in Louisiana.

**Topic 3**

**Defendant's policy, practice, and procedure of employing claims representatives and/or adjusters, including, but not limited to, employment standards and qualifications, communications, compliance with STATE FARM claims manuals, as well as the policy, practice, and procedure for promotion of such individuals within Defendant corporation. This includes all corporate decisions to delegate claims handling authority to adjusting agencies, the State of Louisiana.**

State Farm argues that its hiring and promotion decisions regarding claims representatives and adjusters are irrelevant. (R. Doc. 33-6 at 6). State Farm further argues that preparing a corporate representative on such topics would be unduly burdensome because

8

employment and promotion decisions touch on many aspects of human resources and management. (R. Doc. 33-6 at 6). Similarly, State Farm argues that because there was no delegation of claims handling authority with regard to Mr. Krantz's claim, that topic is irrelevant and should be stricken. (R. Doc. 33-6 at 6). Mr. Krantz provides no specific arguments in response.

With the exception of promotion decisions regarding claims representatives and/or adjusters, which could go to bias, the information sought in Topic 3 is irrelevant to the claims and defenses in this action. Accordingly, the court **limits** Topic 3 to State Farm's policy, practice, and procedure for promotion of claims representatives and/or adjusters within State Farm.

### Topic 4

**Defendant's policy, practice, and procedure of training any and all claims representatives, adjusters, and all other personnel involved in the claims processing and/or adjustment operation. This includes the requirement to ensure that third party adjusting agencies meet all State and Company policies to comply with applicable laws and policy provisions.**

State Farm argues that the training of its claims representatives and adjusters is irrelevant because the facts relevant to determining whether its handling of Mr. Krantz's claim was "arbitrary, capricious or without probable cause" is limited to the information presented, the decision made, and why the decision was made. (R. Doc. 33-6 at 7). State Farm further argues that "third party adjusting agencies" have no bearing on this case. (R. Doc. 33-6 at 7). Mr. Krantz provides no specific arguments in response.

The broad information sought in Topic 4 is irrelevant to the claims and defenses in this action. Accordingly, the court **strikes** Topic 4.[2]

---

[2] This Order does not preclude questions regarding specific training and background of any claims adjusters directly involved in Plaintiff's insurance claim.

**Topic 7**

**Defendant's document retention policy.**

State Farm argues that because the instant claim is barely one year old, and there has been no showing that "any relevant documents or information have been lost, destroyed, or otherwise made unavailable," this topic seeks irrelevant information. (R. Doc. 33-6 at 7). In response, Mr. Krantz argues that how State Farm "manages and retains its documents is absolutely relevant" because State Farm has provided that Ms. Ellender "did not intend on sending to the plaintiff the computer generated printout stating that he would be receiving structural funds to repair his home." (R. Doc. 45 at 9). Mr. Krantz further argues that State Farm's document retention policy is relevant to how State Farm's global protocols affected their decision making process. (R. Doc. 45 at 11 n.9).

There is no indication in the record that State Farm's "document retention policy," without limitation in scope or subject matter, is relevant to a claim or defense in this action, and it would be otherwise unduly burdensome to require State Farm to provide a deponent on such a broad topic. Accordingly, the court **limits** Topic 7 to State Farm's document management procedures and quality control protocols as of September 19, 2014 regarding first-party homeowners' insurance claims involving property damage to real property in Louisiana.

**Topic 9**

**Any and all engineering reports commissioned by Defendant for fire insurance claims which were distributed to management.**

State Farm argues that the topic is vague and overly broad. (R. Doc. 33-6 at 8). The court agrees. Accordingly, the court **limits** Topic 9 to engineering reports specifically pertaining to Mr. Krantz's particular fire insurance claim.

10

**Topic 10**

**Defendant's corporate structure.**

State Farm argues that this topic is overly broad and "should be restricted to the management structure of the claims personnel that were involved in the Plaintiff's claim." (R. Doc. 33-6 at 8). Mr. Krantz argues that State Farm's corporate structure is relevant to how State Farm's global protocols affected their decision making process. (R. Doc. 45 at 11 n.9).

As stated, this topic is overly broad. Accordingly, the court **limits** Topic 10 to State Farm's corporate structure to the extent it bears upon State Farm's complete and total chain of command of claims adjusting and processing.[3]

**Topic 11**

**Method in which Defendant calculates depreciation for personal property and real property.**

**Topic 12**

**Method in which Defendant values damage to personal property and real property.**

State Farm argues that Topics 11 and 12 are irrelevant because there "is not a dispute of the amount of payment due" but instead only a dispute "over whether the Plaintiff is entitled to *any* payment." (R. Doc. 33-6 at 9). Contrary to State Farm's assertions, Mr. Krantz has alleged that State Farm failed to pay certain amounts and failed to properly calculate those amounts, including overly depreciating the value of the personal property and real property at issue. (Petition, ¶ 12). Accordingly, the court **limits** Topics 11 and 12 to the methods used by State Farm to calculate depreciation for, and to value damage to, personal property and real property

---

[3] The court recognizes that this limitation to Topic 10 may now make it redundant with Topic 8. Topic 8 is as follows: "Defendant's complete and total chain of command of claims adjusting and processing."

11

as of September 19, 2014 for the purpose of adjusting adjust first-party homeowners' insurance claims involving property damage to real property in Louisiana.

**Topic 13**

**Use of pricelists contained in computerized estimating software, including, but not limited to: (a) who created the pricelists; (b) what the pricelists are based upon; (c) any supporting documentation for the pricelists; (d) any evaluation of the price for labor and construction materials within the boundaries of the Middle District of Louisiana; (e) method of training adjusters and claims representatives on the use of estimating software; (f) documents instructing adjusters and claims representatives on the use of the estimating software; (g) how the pricelists are maintained within STATE FARM; (h) any and all contracts with the company which creates and/or maintains the pricelists; (I) any communications between Defendant and the company which supplies, creates, and/or maintains the pricelists; (j) the reasons for using the pricelists; (k) how much is paid for the use of the pricelists and/or the estimating software; (l) any communication within Defendant company concerning the need to deviate in any way from the pricelists in the computer estimating software; and (m) the procedure, if any, for an adjuster or claims representative to alter the pricelists in the computer estimating software.**

**Topic 19**

**The existence of any 'pricing department' in which Defendant assesses pricelists.**

State Farm argues that Topics 13 and 19 are irrelevant because "Plaintiff has not alleged any actual facts that State Farm has undervalued the cost of repairs to his property." (R. Doc. 33-6 at 10). There is no dispute, however, that Mr. Krantz has alleged that State Farm failed to pay certain amounts and failed to properly calculate those amounts, including overly depreciating the value of the personal property and real property at issue. (Petition, ¶ 12).

As noticed, the court finds these topics to be overly broad. Accordingly, the court **limits** Topics 13 and 19 to the existence of any "pricing department" and the specific use of "pricelists" on Mr. Krantz's particular fire insurance claim. If such pricelists were used, then State Farm

shall provide a deponent to testify regarding the source of the information contained therein and the use of such lists on the Mr. Krantz's claim.

**Topic 14**

**All materials provided to adjusters and/or claims representatives concerning the instruction, decision, and/or training to determine the scope of damage.**

**Topic 15**

**All training provided to adjusters and/or claims representatives to determine the scope of damage.**

State Farm argues that Topics 14 and 15 are irrelevant because "there is no factual allegations that State Farm improperly valued damage to property" and "a discussion of training of adjusters to perform various functions is overkill, when all that is necessary is discussion of what was done, and why." (R. Doc. 33-6 at 10). Mr. Krantz argues that State Farm's training of adjusters is relevant to how State Farm's global protocols affected their decision making process. (R. Doc. 45 at 11 n.9).

Considering the facts alleged in this action, the court finds the foregoing topics of inquiry relevant to the claims and defenses in this action. As stated, however, the topics are overly broad. Accordingly, the court **limits** Topics 14 and 15 to the training of, and training materials provided to, claims adjusters and/or representatives in State Farm's special investigations unit holding the same position as Ms. Ellender.

**Topic 16**

**The policy, practice, and procedure for creating and maintaining an underwriting file.**

State Farm argues that there is no issue in this case regarding sufficient coverage or whether the policy was in effect. The court agrees that there are no claims or defenses in this litigation concerning the underwriting of the policies, including whether any misrepresentations

13

were made on the policy application.  The claims and defenses in this action concern whether Mr. Krantz's claim was properly adjusted in good faith.

The information sought in Topic 16 is irrelevant to the claims and defenses in this action.  Accordingly, the court **strikes** Topic 16.

### Topic 17

**The policy, practice, and procedure for setting a reserve for a fire claim.**

In opposition to Topic 17, State Farm argues that reserve information, "even if limited to the relevant time period and fire claims in the State of Louisiana," is irrelevant in a bad faith case.  (R. Doc. 33-6 at 11).  The court disagrees that such a decision is compelled.  *See First Nat. Bank of Louisville v. Lustig*, No. 87-5488, 1991 WL 236839, at *2 (E.D. La. Oct. 30, 1991) ("Reserve information, including any post-litigation reserve information, is relevant to show the insurer's state of mind in relation to its claims settlement practices."); *see also Alta Vista Prods., LLC v. St. Paul Fire & Marine Ins. Co.*, No. 10-1948, 2011 WL 3290395, at *3 (E.D. La. Aug. 1, 2011) (noting decisions finding that reserve information is discoverable when bad faith is asserted, and stating that the Fifth Circuit has not ruled on whether reserve information is discoverable, but finding Magistrate Judge's decision that reserve information was not relevant to the particular bad faith claims at issue to not be clearly erroneous); *but see Lambert v. Liberty Mut. Fire Ins. Co.*, No. 13-23, 2013 WL 6169119, at *2 (M.D. La. Nov. 25, 2013) ("[T]here is no basis to compel the defendant to produce unredacted records that reflect the defendant's claim expense reserve, which the reserve set to cover the fees and costs of the litigation. Plaintiffs failed to explain how this information is reasonably calculated to lead to admissible evidence relevant to their bad faith claim.").

The court finds reserve information for Mr. Krantz's particular claim to be relevant to the claims and defenses in this action. Importantly, Mr. Krantz received a decision by State Farm stating that certain amounts would be paid. State Farm has subsequently denied coverage, arguing the original coverage letter was sent in mistake. Questions concerning State Farm's policy, practice, and procedure for setting reserve information in fire claims in Louisiana during the relevant time period set by this Order seek relevant information.

Accordingly, the court **limits** Topic 17 as discussed above. As neither party has raised the issue, the court makes no ruling at this time regarding whether reserve information regarding Plaintiff's claim is protected by the attorney-client privilege and/or the work product doctrine. *See Guar. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 90-2695, 1992 WL 365330, at *7-8 (E.D. La. Nov. 23, 1992)

**Topic 20**

**The policy, practice, and procedure for evaluating a Louisiana contractor's estimate of damages.**

**Topic 21**

**The policy, practice, and procedure for determining the availability and calculation for overhead and profit.**

**Topic 22**

**The policy, practice, and procedure for determining the availability and calculation for a contingency percentage.**

State Farm argues that Topics 20, 21, and 22 are irrelevant because "State Farm's evaluation of damages is not an issue in this case." (R. Doc. 33-6 at 12). The court disagrees with this position.

As stated, the court finds these topics to be overly broad. Accordingly, the court **limits** Topics 20, 21, and 22 to the existence of the stated policies, practices, and procedures to the extent they pertain to Mr. Krantz's particular fire insurance claim.

**Topic 33**

**The spheres of payment and/or settlement authority within STATE FARM, including delegation of same (if any) to third party administrators or outside adjusters.**

State Farm argues that this topic has no relevance to its "decision making with regard to whether or not to pay Plaintiff's claim." (R. Doc. 33-6 at 12). Topic 33 appears to overlap with Topic 17, which concerns reserve information. To the extent information under Topic 33 could be considered discoverable, the limitations under Topic 17 are sufficient.

Accordingly, the court **strikes** Topic 33.

**C.   Expenses**

Both parties seek to recover expenses for bringing their respective motions. As set forth above, the court has granted in part and denied in part certain portions of the parties' motions. If a motion to compel or motion for protective order is granted in part and denied in part, a court may apportion the reasonable expenses for the motion. Fed. R. Civ. P. 37(a)(5)(C); *see* Fed. R. Civ. P. 26(c)(3). The court concludes that the parties shall bear their own expenses in connection with the respective motions.

**III.   Conclusion**

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's Motion to Compel and Defendant's Motion for Protective Order are **GRANTED IN PART AND DENIED IN PART** in accordance with this Order. The parties shall bear their own expenses. State Farm shall designate a representative or representatives to testify as to the topics allowed by this Order. On or before February 1, 2016,

the parties shall agree upon a date to conduct the deposition(s). The deposition(s) shall take place no later than February 29, 2016. To the extent agreed upon by the parties, Cindy Ellender may serve as a corporate representative of State Farm for all or part of the Rule 30(b)(6) deposition of State Farm. As non-expert discovery closed on January 21, 2016, no additional discovery will be allowed unless the parties seek leave for an extension of the discovery deadline in accordance with Rule 16(b)(4).

Signed in Baton Rouge, Louisiana, on January 25, 2016.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**